## Case No. 14,272.

TURRILL v. ILLINOIS CENT. R. CO. et al.

[5 Biss. 344;[1] 6 Chi. Leg. News, 49.]

Circuit Court, N. D. Illinois. July 26, 1873.[2]

PATENTS—REFERENCE TO ASCERTAIN DAMAGES—WHAT TO BE CONSIDERED — INFRINGEMENT — BASIS FOR ESTIMATING DAMAGES—EXCEPTIONS.

1. Where a patent has been sustained by the court, the master. on a reference to ascertain and report the amount of damages caused by the infringement, should not go into the general question of infringment, nor consider the general scope and extent of the patent· he should simply examine and decide as to the extent of the infringement as to the particular machine used by the defendants.

2. The principles as to the validity of the patent having been decided by the court, the master's duty is simply to apply them to the machines actually used.

3. It is not his duty to go through the history of the machines offered in evidence, but only to compare them together.

4. Where there has been a constant effort to approach as near as possible to the machine patented, such conduct of the defendants may be considered in deciding the question of infringement.

5. The Bain patent, for a machine for mending rails. is not an infringement of the Cawood machine.

6. Where at the time of the use by the defendants of the Cawood machine there was no other method of repairing rails than a common anvil

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

[2] [Reversed in part in 94 U. S. 695.]

or swage-block, a comparison of these two methods is the proper basis for estimating the damages.

7. It is not competent to show that it was unprofitable to repair rails by the Cawood machine, or that it would have been better to re-roll them, or otherwise dispose of them; it must be presumed that the defendants' interests were promoted by their use of the machine, and they can not be permitted to show that they pursued the wrong policy.

8. The proper basis for estimating the damages caused by the infringement is the cost of repairing the rails on the Cawood machine as compared with the cost by other known methods. The rule in Mowry v. Whitney, 14 Wall. [81 U. S.] 620, followed.

9. It seems, that the difference in cost of the respective machines is a proper element in estimating the amount of profits arising from their use.

10. Where exceptions did not point out wherein the master erred, and the counsel do not direct the attention of the court to the evidence establishing the alleged error, such exceptions will be overruled.

11. Where railroad companies had consolidated and enlarged their charters, the master should ascertain to what extent each company had infringed.

These were five bills in equity against the Illinois Central and four other railroads [the Chicago, Burlington & Quincy Railroad Company, the Michigan Southern & Northern Indiana Railroad Company, the Chicago & Alton Railroad Company, and the Pittsburg, Ft. Wayne & Chicago Railway Company], brought by Samuel H. Turrill, assignee of Joseph D. Cawood, for an infringement of the patent issued September 9th, 1856, for a new and useful improvement on the common anvil or swage-block for the purpose of welding up and reforming the ends of railroad rails. These cases were by consent of counsel heard and submitted together. This patent has already been before the supreme court of the United States (Turrill v. Michigan Southern & N. I. R. Co., 1 Wall. [68 U. S.] 491) and also twice before this court [Cases Nos. 14,270 and 14,271], and the validity of the patent was sustained. By the interlocutory decree of July 18th, 1871 [Case No. 14,271] this court affirmed the validity of the patent, and referred the cases to the master to ascertain and report which, if any, of the machines used by the defendant infringed the patent, and what damages the patentee had sustained by said infringement. The master, on the 7th of November, 1872, reported that all of the seven machines used by defendants (the Illinois Central, the Etheridge, the Whitcomb or Cleveland block, the Michigan Southern. the bayonet vise, the Beebe & Smith, and Bain's reversible rolls) infringed the plaintiff's patent within the rules and principles as laid down by the court, and that the only other appliances used by defendants for the purpose of repairing railroad rails was the common anvil or swage-block. On the coming in of this report, the several defendants filed thirty exceptions to the report; which exceptions are sufficiently stated in the opinion.

B. F. Ayer and Walter Curtis, for plaintiff.

George Gifford, J. N. Jewett, George Payson, and R. Biddle Roberts, for defendants, who cited Mowry v. Whitney, 14 Wall. [81 U. S.] 620; Jones v. Morehead, 1 Wall. [68 U. S.] 155; Livingston v. Woodworth, 15 How. [56 U. S.] 546; Seymour v. McCormick, 16 How. [57 U. S.] 480.

Before DAVIS, Circuit Justice, and DRUMMOND, Circuit Judge.

DRUMMOND, Circuit Judge. The exceptions made to the master's report in these cases are numerous, but they may all be considered under a few general heads.

The first seven exceptions refer to the fact that the master assumed that the patent had already been construed by the court, and that he declined to go into the general state of the art in order to determine whether the defendant's machines infringed the patent, and also refused to consider the general scope and extent of the patent.

These exceptions must all be overruled. The patent has been construed by the supreme court of the United States and by this court. The supreme court had declared the principles which are to govern in comparing the machine of the plaintiff with others alleged to be infringed, and this court, in the case of Turrill v. Illinois Cent. R. Co. [Case No. 14,270], had decided the plaintiff's patent to be valid, and that certain machines used by the defendants violated the plaintiff's patent. In these cases in which the master has made his report, and which are the subject of the exceptions, the court in July, 1871, found that the plaintiff was entitled to the relief he asked against the defendants. That is, that the patent is valid and that the defendants had infringed. It appeared that various expedients had been resorted to by some of the defendants in order to evade the patent. The court held that the anvil was an essential part of the machine to support the jaws, while they held the rail in the act of reparation, but that the clipping out of or removal of a portion of the anvil immediately beneath the rail, so as to prevent its contact with the anvil, did not of itself destroy the identity of the machine. At the same time it was conceded that if the anvil was so far cut off or removed as to cease to support the rail in receiving the blows of the hammer, an indispensable part of the machine was gone. It was because of the difficulty of ascertaining the extent to which the alterations had been made in all the machines used by the defendants, and because of the imperfect condition of the evidence as to one of the machines, that the court directed the master to report what machines, used by the defendants, infringed. It would have been, therefore, obviously out of place for the master to go into the general state of the art either as to the construction of the patent

or the infringement. All that he had to do was to decide as to the extent of the infringement, and as to the particuar machines used by the defendants. And we say this without intending to deny the right of the master, in case the evidence before him presented the patent under any other aspect not previously considered by the court, to report the facts for its instructions.

The eighth and ninth exceptions are that the master refused to receive or consider evidence tending to show that some of the defendants' machines were in principle the same as some in use prior to the invention of the Cawood machine, and that he compared only the defendants' machines with Cawood's in order to determine whether or not they infringed.

We think these two exceptions must be overruled. The principles upon which the validity of the patent for the Cawood machine was to be ascertained had already been decided by the court. The master had only to apply them to the Cawood and the other machines used by the defendants, a matter conceded to be not free from difficulty, mainly on account of the efforts made by the defendants to evade the patent as they supposed it was or ought to be construed by the court. As already stated, it is not the duty of the master to go through with the history of the machines offered in evidence, in order to decide whether the defendants' machines infringed the plaintiff's. It was sufficient to compare them together to reach a conclusion on the subject. Any other rule would cause him to go over the ground already examined by the court.

The 10th, 11th, 12th, 13th, 14th, and 15th exceptions refer to the machines used by the defendants, and which the master has reported infringed the plaintiff's machines.

These exceptions will be overruled. In some of the machines it may be admitted it is a question of some nicety, as in the Beebe & Smith, the bayonet vise, and the Michigan Southern. It is insisted the master should not have reported these as infringing the Cawood machine, because, among other reasons, of the different construction of the jaws and the want of the anvil support. Stress is placed on a remark of the court in the case of Turrill v. Illinois Cent. R. Co. [supra], to the effect that when the jaws of a vise are cut to the shape of any instrument to be held, it would suggest the idea at once that they might be changed to the form of any other instrument or object. But this remark was made with regard to the Cawood machine in its finished state, and treating the jaws as a vise. It was certainly a fact that the common anvil or swage-block had long been used for repairing rails, and in comparing the old machine with the new, the difference in the operation and in the time, expense, and labor, could not be lost sight of. And as connected with this the anvil as a support to the jaws while

holding the rail, in receiving the blows of the hammer, was considered essential. Now, it is true, in some of these machines, the jaws are more elongated than in the Cawood machine, and in some the rail, in the act of hammering, does not actually come in contact with the anvil, or what takes the place of the anvil, but in all there is something more than a mere vise, and that seems borrowed from the Cawood machine. And we think in deciding on the question of infringement, the conduct of the defendants in relation to their machines may be considered. There seems to have been a constant effort to approach as near as possible to the plaintiff's machine, and yet not close enough to infringe. And in overruling these exceptions, we think that while it may be true that the same rules should be applicable as in comparing the Cawood machine with other and prior machines, to test the validity of the patent, yet that on the question of infringement the comparison should be made directly between the plaintiff's and the defendants' machines.

The sixteenth exception will be sustained. That is made because the master found the Bain machine infringed the Cawood machine. We do not agree with the master in this. Cawood's patent does not include any machine by which a rail may be held in the act of reparation, but its own special method. Any other person was at liberty to devise a different method of holding the rail. This we think Bain has done by his machine. There are no jaws like those of the Cawood machine. There is no hammer used. The whole operation is performed by placing the rail between four rollers, two vertical, which sustain and press the rail, and two horizontal, one each side, to hold it. It is a rolling process—all the rollers moving as the rail advances or recedes in the act of reparation. The elemental idea of the Bain machine seems to us to be different from that of the plaintiff's machine. All the other machines found by the master to infringe, may be said to be the emanations or suggestions of the Cawood machine. This cannot be affirmed of the Bain machine. It is, as to this, an independent creation.

The 17th 18th, 19th, 20th, 21st, 22d, 23d, 24th, and 25th exceptions relate to the finding by the master, that the old swage-block and the Cawood machine are the only two instruments by which the rail could be repaired, and that the comparison must be between them, to the rejection of evidence showing that it was unprofitable to mend rails in the Cawood machine, and that it was better to re-roll them, or dispose of them in some other way.

These exceptions will all be overruled. We do not understand that up to the time of the invention and construction of the Cawood machine there was any other known method of repairing the rails than the common anvil or swage-block. The master reports

that the only appliance previously used by the defendants was the common anvil or swage-block, and his statement is not contradicted. If, then, the rails were repaired on the Cawood machine substantially in the same way, and the same result reached as when repaired on the common anvil, these were the only implements of comparison. As long as the defendants used the Cawood machine, these were the only things that could be compared. It was competent always for the defendants, at any time, to make some other disposition of their damaged rails—to cut off the shattered ends, or to re-roll them, or sell them for old iron. As long as they mended them by the method of the Cawood machine, it must be presumed that it was done because the interests of the defendants were thereby promoted, and it cannot be permitted to the defendants to show that they pursued a wrong policy, and that they could have disposed of their rails much more profitably. This would strike at most of the patented devices of the time, they being constantly liable to be superseded by improvements, the progress in art and the teachings of experience. Because it may have been ascertained that the use of rails mended on the common anvil, or on the Cawood machine, is attended with risk, the defendants could hardly be permitted to set off any possible damages they might sustain from breakage. We think, therefore, the master was correct in comparing the common anvil and the Cawood machine, and the costs of doing the work on them.

And this brings up the objections made to the rule adopted by the master in estimating the profits of the defendants by the use of the plaintiff's machine. We admit that if at the time of their use there appeared to be any other methods of repairing the rails, then the damages of the plaintiff might be the difference between the least expensive of these methods and that of the plaintiff's machine, because that would be the advantage which the defendants derived by using the plaintiff's machine over any other appliance then open to them and by which the rails could be mended equally well. But as we understand the rule laid down by the supreme court in Mowry v. Whitney. 14 Wall. [81 U. S.] 620, on the facts found by the master, his rule of profits was correct.

The 26th, 27th, 28th, 29th, and 30th exceptions relate to omissions of the master to find the difference in the cost of the machines and their use. We think that these may be proper elements to enter into the amount of profits in using the different machines; but the exceptions fail to point out wherein the master has erred, and the counsel have not in the argument directed our attention to the evidence which establishes the error of the master in this respect, nor has the evidence been brought before us.

We therefore do not judicially know the cost of the various machines reported by the master to infringe, nor the expense of using them. We think, in order that these exceptions should be available to the defendants, the evidence showing the error of the master should be specifically pointed out, at least in the argument. That has not been done, and therefore they will be overruled. And we may add that, so far as we can judge from our inspection of the machines, with the exception of the Bain machine, the difference in the cost of the infringing machines, as compared with the Cawood machine, could not be very great.

The exception, which is special on the part of the Chicago and Fort Wayne Railway Company, is, we think, well taken, and must be sustained. In view of the history of this company and the legislation affecting it, the master ought to have found how far and to what extent the old company and the new infringed, and if there was a difference, a discrimination should have been made—the more so as the new company may not be responsible for the debts of its predecessor.

It is objected in the argument that the master has not drawn correct conclusions from the evidence as to the cost of labor and fuel in mending the rail on the anvil and on the Cawood machine. The evidence proving the error of the master has not been pointed out to us, and it would be necessary to examine critically the whole of the testimony in this branch of the case in order to determine—something we could hardly be expected to do on such a general objection as this; but as the case will have to be sent back to the master, he can be directed to re-examine the evidence and correct any conclusions he has made, if he thinks the evidence justifies it.

NOTE. In cases of infringements of patents in actions at law, the measure of damages is precisely what is lost to the plaintiff, and not what the defendant has earned. Cowing v. Rumsey [Case No. 3,296]. Under this rule the complainant is entitled to the value of the saving made by a defendant through the wrongful use of the patented process. Tilghman v. Mitchell [Id. 14,041]. Consult also Suffolk Co. v Hayden, 3 Wall [70 U. S.] 315. and a thorough collection of cases in Sedg. Dam. (6th Ed.) 726, and note 4.

[Appeals were taken by all the defendants in these cases. The cases were heard together in the supreme court, which decided that the Cawood patent was not infringed by the machines called the Beebe & Smith, the bayonet vise, and the Michigan Southern machine. This decision resulted in a reversal of the decree below in two of the five cases, viz. the cases against the Illinois Central Railroad and against the Michigan Southern & Northern Indiana Railroad. These two cases were remanded for further proceedings. As to the other three cases, the decree was affirmed. 94 U. S. 695. Subsequently in the case against the Michigan Southern & Northern Indiana Railroad the report of the master was affirmed. 20 Fed. 912. This last case was affirmed by the supreme court. 110 U. S. 301, 4 Sup. Ct. 5.]