# FENTON METALLIC MANUFACTURING COMPANY

*v.*

# THE OFFICE SPECIALTY MANUFACTURING COMPANY.

---

# THE OFFICE SPECIALTY MANUFACTURING COMPANY

*v.*

# FENTON METALLIC MANUFACTURING COMPANY.

---

### PATENTS; INFINGEMENTS.

1. In a suit for infringement of a patent where experts are called to testify as to anticipatory inventions, they should be required to point out the several resemblances and differences.
2. Invention consists in the combination of old elements as well as in the discovery of an element entirely new, provided it produces a new and useful result.
3. In actions for infringement of patents, the patent is *prima facie*

evidence of invention as well as that the patentee is the original inventor, and the very fact that a reasonable doubt exists is sufficient to sustain the claim of the patentee.

4. Although by certain modifications, inventions claimed in an infringement suit to anticipate the patent therein involved might have been made to perform the functions of the patentee's invention, if it is apparent from their drawings and specifications these were not in the minds of such inventors, their inventions can not upon that ground be regarded as anticipations.

5. While extended sales and speedy general use are not themselves to be regarded as proving invention, they have considerable weight where the existence of patentable novelty is otherwise a matter of doubt.

6. The claims of a patent alleged to have been infringed will be restricted to the specific combination described.

7. The claim of a combination is not infringed if any of the material parts of the combination are omitted, but if any one of the parts is only formally omitted, and is supplied by a mechanical equivalent, performing the same office and producing the same result, the patent is infringed.

Nos. 726 and 727.   Submitted January 6, 1898.   Decided February 8, 1898.

HEARING on an appeal and a cross-appeal from a decree in a suit for infringement of a patent.   *One reversed and one affirmed.*

The COURT in its opinion stated the case as follows:

This suit is for the infringement of a patent, and both parties have appealed from the final decree in part. The bill was filed by the Fenton Metallic Manufacturing Co. against Charles E. Birckhead and The Office Specialty Manufacturing Co.   By stipulation, Birckhead, who was the local agent of his codefendant, has been dismissed from the suit.

Complainant is the assignee of Horace J. Hoffman, to whom a patent was issued February 12, 1887, for an improved storage case for books.   Defendant is the assignee of Jewell and Yawman, who claimed a patent for an improvement in book shelves also.

The application of Hoffman and that of Jewell and Yawman were placed in interference in the Patent Office on a

question of priority of invention; and the contest resulted in a final decision by the Commissioner of Patents in favor of Hoffman, March 7, 1891.    Patent was issued to Hoffman for the invention claimed on April 7, 1891.    The proceedings in the Patent Office are made exhibits to the bill.

The bill charges the defendant with selling and offering for sale the improvement of the complainant, to its great damage and injury.    The bill prayed for an account of the damages claimed and for a decree, and for an injunction against further infringement.

The answer admits the proceedings and decision of the Patent Office, but denies that Hoffman was the first inventor. It further alleges that the patent to Hoffman should be declared void for want of patentable novelty, on the ground that it covers a combination of old devices which perform no new function, and are the product, not of invention, but of ordinary mechanical skill; and, also, that the subject-matter of the invention, as claimed, has been anticipated in certain patents which are enumerated.

It is further charged that if the Hoffman patent be valid, it is by its terms confined to a certain, particular form, which the defendant has not infringed.

Upon hearing, on the evidence of infringement, the court below entered a decree June 3, 1893, to the following effect:

1.    That letters patent No. 450,124, issued April 17, 1891, are valid.

2.    That said Hoffman was the first inventor of the invention claimed in said patent; and that defendant has infringed it by using and vending within the District of Columbia, roller shelves made as illustrated by figure 17 of its catalogue, and by " Exhibit Hansman's sketch," and " cases containing roller shelves embodying the improvement specified in said letters patent particularly claimed in claims one and two thereof."

3.    That complainant recover the gains and profits which defendant has received by reason of its infringement; and

the cause is referred to the auditor to take an account of the same accruing or arising out of "the manufacture, use, and sale of shelves, or cases containing shelves, embodying the improvements described and claimed in claims 1 and 2 of said letters patent No. 450,124, and also to assess the damages suffered by the plaintiff herein by reason of said infringement."

4. That defendant be perpetually enjoined from making, using or selling any shelf infringing the plaintiff's claims 1 and 2.

An elaborate and carefully considered report was filed by the auditor on January 15, 1897, accompanied with the evidence taken and schedules of particulars showing the foundations of his conclusions.   This report concludes as follows:

"I find from the proof that the defendant company has sold, between the date of the sustained patent and the 1st of September, 1896—

"25 shelves of the form and description illustrated in Exhibit Office Specialty Manufacturing Company Catalogue, Figure 17, and—

"28,171 shelves of the form and description illustrated in Exhibit Hansmann's sketch.

"I find that these shelves were sold by the defendant at an average price of $2.27 per shelf in combination with cases.

" I find that of the said average price of $2.27 one-half is attributable to the shelf alone.

"I find that the average cost to the defendant of manufacture of these shelves in combination with cases is 99 cents per shelf.

"I find that of the said average cost one-half is attributable to the shelf alone. .

"I find that the proportion of the general expenses of the defendant's business to be borne by the said shelves is .3837 per cent. of the gross proceeds of sale.

" In accordance with these findings I have in Schedules B and C herewith stated an account of the profits realized by the defendant from the sale of these said shelves, and these two schedules are made a part of these findings.

" I find that the roller shelf sold by the defendant and designated as new No. 4 roller shelf is substantially the same in form and description as the shelf illustrated in Exhibit Office Specialty Manufacturing Company Catalogue, Figure 17, and in Exhibit Hansmann's sketch.

" I find that the number of said shelves sold by the defendant between the date of the sustained patent and the 1st of September, 1896, is 18,427.

" I find that the average gross proceeds of the said sales attributable to the shelves separately from cases is $1.135 per shelf.

" I find that the average cost of manufacture of the said shelves separate from cases is .495 per shelf.

" I find that the proportion of the general expenses of defendant's business to be borne by the said shelves is .3837 per cent. of the gross proceeds of sale, being .435 per shelf.

" I find that the net profits realized by the defendant from the sale of the 25 shelves first above described to September 1, 1896, to be $5.125, as shown in Schedule B.

" I find that the net profits realized by the defendant from the sale of the shelves described in Exhibit Hansmann's Sketch to be $5,775.05, as shown in Schedule C.

" I find the net profits realized by the defendant from the sale of the shelves designated as new No. 4 roller shelf to September 1, 1896, to be $4,777.53, as shown in Schedule D, which schedule is also made a part of these findings.

" On the question of damages suffered by the plaintiff the evidence is incomplete. The only particular in which it appears that the plaintiff could have suffered in this respect would be by a diversion of business from the plaintiff by the defendant, and on this point the evidence is insufficient for the ascertainment of any damage."

Defendant excepted to the report on many grounds, all of which were overruled except as to the item of damages assessed for infringement through the sale of what was designated as "New No. 4 Roller Shelf." These damages were assessed at $4,777.53.

A final decree was then entered ordering the payment by the defendant, of the sum of $5,780.17, with interest from January 15, 1897, on account of the infringement found in the two structures specifically set out in the decree; but denying the aforesaid item of $4,777.53 as being beyond the terms of that decree and the reference thereunder to the auditor.

Defendant appeals from the decree as entered, and the complainant has taken a cross-appeal from that part of the same which sustained the exception to the item aforesaid of the auditor's report.

*Mr. Melville Church* and *Mr. Joseph B. Church* for the appellant:

1. The invention covered by the patent in suit is an improvement in roller shelves. As the patentee, Hoffman was not the first to make and use roller shelves, but was a mere improver, the court will find it an aid in arriving at the proper construction of the patent in suit to have in mind the pre-existing devices. Evidence of this kind is always receivable, and a foundation for it is not even required to be laid in the answer. *Brown* v. *Piper,* 91 U. S. 37; *Grier* v. *Wilt,* 120 U. S. 412; *Vance* v. *Campbell,* 1 Black, 427; *Loom Co.* v. *Higgins,* 105 U. S. 580; Robinson on Patents, Vol. 3, Par. 1020.

2. From the history of the career of the Hoffman application through the Patent Office, it appears, first, that the carrying or curving back of the front bar of the shelf frame, or, in other words, the forming of the re-entrant bend in the front bar of the Hoffman frame, was regarded as constituting the very gist and essence of the invention, and it is

clear that unless this limitation had been imposed upon the Hoffman claims they would never have been granted. It is further evident from this history that the Patent Office did not consider a frame that had a straight front bar and separate rollers supported thereon as containing the Hoffman invention. Hoffman's assignee, the plaintiff in this cause, can not now be heard to say that such limitations are immaterial and may be disregarded. *Roemer* v. *Peddie*, 132 U. S. 315; *Sargent* v. *Lock Co.*, 114 U. S. 63; *Sutter* v. *Robinson*, 119 U. S. 530; *Royer* v. *Coupe*, 146 U. S. 524; *Leggett* v. *Avery*, 101 U. S. 256; *Vulcanite Co.* v. *Davis*, 102 U. S. 222; *Fay* v. *Cordesman*, 109 U. S. 408; *Mahn* v. *Harwood*, 112 U. S. 624; *Shepard* v. *Carigan*, 116 U. S. 593; *White* v. *Dunbar*, 119 U. S. 47; *Bragg* v. *Fitch*, 121 U. S. 478; *Snow* v. *Railway Co.*, 121 U. S. 617; *Crawford* v. *Heisinger*, 122 U. S. 589; *Caster Co.* v. *Speigel*, 133 U. S. 360; *Lock Co.* v. *Bank*, 135 U. S. 343; *Dobson* v. *Lees*, 137 U. S. 258; *Mach. Co.* v. *Belden*, 147 U. S. 482; *Envelope Co.* v. *Albany Co.*, 152 U. S. 425.

3. Granting of the Jewell and Yawman patent No. 557,392, under which defendant makes the new No. 4 shelf, supports defendant's claim of noninfringement. Where the patentee of a mere improvement in an art sues the user of another patented improvement, the circumstance that the defendant has a patent for his structure tends to prove lack of identity of structure and to negative the charge of infringement. The grant to defendant is evidence of a substantial difference between his device and that of the plaintiff. *Boyd* v. *Tool Co.*, 158 U. S. 260; *Corning* v. *Burden*, 16 How. 265; *Ransom* v. *Hyatt*, 67 F. R. 148; *Brown* v. *Selby*, 2 Biss. 457; *Harrow Co.* v. *Hanby*, 54 F. R. 493; *Brake Co.* v. *Brake Co.*, 70 F. R. 816.

4. Hoffman having invented a specific improvement merely, can. not invoke the doctrine of equivalents. *Dederick* v. *Gardner*, 50 Fed. R. 100; *Machine Co.* v. *Roof Co.*, 76 Fed. R. 965; *Machine Co.* v. *Hanes*, 70 Fed. R. 859; *Bragg* v.

*Fitch*, 121 U. S. 478; *Manufacturing Co.* v. *Engine Co.*, 1 C. C. A. 410; *Jones Co.* v. *Munger Co.*, 1 C. C. A. 158; *Fox* v. *Perkins*, 3 C. C. A. 32; *Pettibone* v. *Stanford*, 3 C. C. A. 469.

5. In order that a plaintiff may recover profits of a defendant, in a patent case, it is necessary that he show the actual profits that the defendant made, not the profits that he might have made or should have made; but the profits that he actually did make, and this must be established by certain and explicit evidence. Speculation and conjecture are not to be indulged in. *Tilghman* v. *Proctor*, 125 U. S. 136; *Garretson* v. *Clark*, 111 U. S. 120; *Manufacturing Co.* v. *Adams*, 151 U. S. 139; *Seymour* v. *McCormick*, 16 How. 480.

6. Section 4900 R. S. U. S. makes it a *sine qua non* that the plaintiff suing for the infringement of a patent must, as a condition precedent to a recovery, show that he has either marked his goods in accordance with this statute or else must prove "that the defendant was duly notified of the infringement and continued after such notice to make, use, or vend the article so patented." The bill in this case makes no allegation respecting either marking or notice, and the proofs fail to show either marking or notice. Under the authorities, there can be no recovery. *Dunlop* v. *Schofield*, 152 U. S. 259; *Traver* v. *Brown*, 69 O. G. 1071; *Blount* v. *Bardsley*, 66 Fed. R. 761; *Allen* v. *Deacon*, 21 Fed. R. 122; *National Co.* v. *Belcher*, 68 Fed. R. 665.

*Mr. Charles E. Foster* for the appellee:

1. In view of the state of the art, there was invention in the changes made by Hoffman, under whom the appellee claims. Time and again the courts have held that where skilled mechanics have had certain structures before them for years and did not make the change finally effected by the patentee, the invention could not be said to be obvious or one requiring mere mechanical skill. *Potts* v. *Creager*, 155 U. S. 608. The fact that others did not make the improvement shows that it was not obvious. *Dubois* v. *Kirk*,

71 O. G. 891. See, also, *Krementz* v. *Cattle Co.*, 69 O. G. 242; *Dederick* v. *Cassell*, 9 Fed. R. 306; *Parks* v. *Booth*, 102 U. S. 96; *Wooster* v. *Blake*, 8 Fed. R. 429.

2. When the utility of a structure has been demonstrated by extensive use, the claims of complainant's patent should be liberally construed. *Sessions* v. *Romadka*, 145 U. S. 29; *Cantrell* v. *Wallick*, 117 U. S. 695; *Winans* v. *Denmead*, 15 How. 330; *Seymour* v. *Osbourne*, 11 Wall. 556; Curtis on Patents, Sec. 309.

3. The fact that a patent issues on a particular detail of construction is not conclusive evidence that the structure does not infringe a prior patent. At most it creates a presumption that may be rebutted. The reports are full of cases where defendants have been restrained, although operating under patents later than those sued upon. *Standard* v. *Crane*, 56 Fed. R. 718; *Holiday* v. *Pickhardt*, 12 Fed. R. 147.

4. There is no basis in the decree referring this case to the auditor, for the contention that the auditor was limited to shelves exactly like Fig. 17 or Exhibit Hansmann Sketch. It is of frequent occurrence that defendants seek to avoid the effects of an injunction by mere colorable changes. The courts have repeatedly held that such altered structures may be examined into by the auditor, and that he may determine whether or not they come within the order of the court. Walker on Patents, Sec. 742, p. 561; *Valve Co.* v. *Valve Co.*, 141 U. S. 444. The master is justified in examining any substituted structure, and, if he finds the difference to be colorable merely, in including the substituted structure in his report. *Ball Glove Fastening Co.* v. *Ball & Socket Fastening Co.*, 53 Fed. R. 245. A master may inquire whether specific articles are covered by the decree. *Wooster* v. *Thornton*, 26 Fed. R. 274.

5. The fact that in a suit in one circuit court where the evidence may have been different, the patent was not sustained, is no ground for holding it invalid in a suit in another circuit. *Iron Works* v. *Fraser*, 79 O. G. 2015.

6. The first exception is to the auditor's finding that defendant's shelves in cases sold for an average price of $2.27 per shelf. Defendants contend that the testimony shows that they did not always sell at schedule rates. If such was the fact, it was their duty to show specifically where there was a departure. If, as asserted, their books were so kept that they could not do so, that the cost of shelves and selling price was mingled with other articles, this failure can not count to their advantage.

The defendant can not plead his imperfect bookkeeping as an excuse in such cases. If he mingled the products of different articles he can not plead this as an excuse. Walker on Patents, Sec. 717. Further, on this, as well as in proving the cost of manufacture, and other points, the complainant has, beyond question, furnished the best evidence he could obtain. This the court will accept. *Mfg. Co.* v. *Cowing*, 105 U. S. 257; *Emigh* v. *B. & O. Co.*, 6 Fed. R. 283; *Herring* v. *Gage*, 3 B. & A. 399. The evidence need not be absolutely exact, but only "reasonably definite and convincing." Walker, Sec. 715. The proof in accounting "needs not to be severely accurate, but may be sufficient where it furnishes foundation for just inferences rather than certain knowledge." Walker, Sec. 719. See, also, *Adams* v. *Keystone*, 41 Fed. R. 597. This case was reversed by the Supreme Court (151 U. S. 139), but the Supreme Court did not reverse the ruling that the parties were not required to prove the accounts with absolute precision. Absolute proof of the precise items of profit is not required either in showing profits or damages. *Creamer* v. *Bowers*, 35 Fed. R. 209, and cases cited; *Tuttle* v. *Claplin*, 76 Fed. R. 227.

Where the invention embodied the whole article, the rulings of the court have always been to the effect that the entire cost of the article should be considered. *Warren* v. *Keep*, 155 U. S. 268.

In considering the auditor's report, it must be borne in mind that claim 1 of the patent sued upon includes the

cases, as well as the shelves, it being proved that 95 per cent. of the shelves are sold in cases.   It was not absolutely necessary in the accounting to separate the two, if owing to the defendant's bookkeeping the profits could not be divided. Walker on Patents, Sec. 717, p. 548; *Hurlburt* v. *Schillinger* 130 U. S. 456 ; *Heaton* v. *MacDonald,* 57 Fed. R. 648; *Warren* v. *Keep,* 155 U. S. 268.   The auditor's conclusions will stand unless clearly erroneous.   *Tilghman* v. *Proctor,* 125 U. S. 149; *Celluloid* v. *Cellonite,* 40 Fed. R. 477.

Mr. Justice SHEPARD delivered the opinion of the Court:

1. The question at the threshold of the case is that of the validity of the Hoffman patent, the infringement of two of the claims of which is the subject-matter of the suit.

Beginning a number of years ago, the increased and increasing use of very heavy record books in public and private offices made it important to obtain a shelf so constructed as to permit the constant, safe and convenient handling of such books—weighing sometimes thirty pounds and more—and at the same time to preserve their covers from the constant and severe abrasion incident to the use of the ordinary book shelf.

It appears from the evidence that this demand was first attempted to be met many years ago in the Patent Office itself by the use of rollers of wood and metal.   These extended across the shelf from side to side, with journals at each end revolving in bearings provided in cleats attached to the wooden cases.

The evidence tended to show that these were not very effective, because the rollers often warped or sagged in the middle, and abrasion was not prevented; and also because handling was often attended with injuries to hands or fingers.

Quite a number of roller shelves have been invented from time to time, and many have been patented.   One of the best of these was a shelf that was made for use in the

office of the clerk of the court of Wayne County, at Richmond, Indiana. This was made in 1872 or 1873, and was not patented. It consisted of the ordinary wooden shelf with two wooden rollers inserted in spaces cut therein, some four to six inches from the front edge. There was a notch in the outer edge of the shelf making a hand hole for grasping the book in the process of withdrawing the same from the shelf.

Some of the inventions most relied on as anticipations of the invention claimed by the plaintiff will now be noticed.

(1) The Jewell and Yawman experiment of 1886 need not be described. In all the decisions made in the interference proceedings between defendant, as their assignee, and the plaintiff herein, that was found to be nothing more than an incomplete and abandoned experiment. There is no testimony to warrant us in coming to a different conclusion.

(2) Adams Patent Roller and Extension Axle, March 23, 1886. This consists of a series of rollers inside the shelf, with two rollers attached to and extending some inches beyond the front edge of the same. These last have a space between them and rest upon a spring. Their extension in front of the shelf prevents a door closing in upon the shelves in their case.

(3) Harris Patent Improvement in Safe Cases for Books, September 6, 1870. This is called an improved case and has rollers for use in the shelf located some distance back from the front edge thereof.

(4) Boone's patent, September 12, 1876, is for improved book shelves. The improvement consists in a single roller attached to the front edge of an ordinary shelf for books— apparently small books inserted in an upright manner, though capable of use in either way—and a little above the same. The purpose as expressed is to prevent the abrasion of the books by the sharp front edge of the shelf.

(5) Wolfe's patent, October 7, 1879, is for an improve-

ment in book cases. In his case, a series of small, narrow rollers, like wheels, are mounted in boxes resting on the shelf and extending from front to rear. The books may rest directly upon these or upon a movable shelf mounted on them.

(6) Conant Patent Roller Shelf Book Case, April 21, 1885. This calls for a case with shelves wherein the rollers revolve on journals in bearings on strips or cleats attached on both sides of the case from front to rear. It seems to be an improvement of the method used in the Patent Office as above described. The rollers run across the shelf, and one of them is very near the front edge of the shelf so that the recess in the binding at the back of the book may rest upon it.

Other patents were referred to in the defendant's answer, but none save the foregoing are found in the evidence introduced.

In the light of the art as shown in the shelves and cases above described, it remains to examine the plaintiff's claim of invention.

Claims one and two of his patent, which are in controversy here, read as follows:

" 1. In a storage case for books, &c., the combination of a supporting rack or shelf composed of metallic strips and having a re-entrant bend or recess in its front edge, and rollers journalled in said rack and projecting above and in front of the same on each side of said bend or recess, substantially as described.

" 2. In a book shelf the combination of a supporting frame, a series of horizontal rollers, the front roller in two separated sections, the intermediate part of the frame being carried back to permit the admission of the hand between said roller sections, substantially as described."

Plaintiff claims to have invented a shelf through a combination exhibiting more than ordinary mechanical skill. As stated by his expert witness:

"The second claim of the Hoffman patent is, as I understand it, for a book shelf embracing the combination of a number of features or elements recited therein, arranged and operated substantially as described in the specification, and the novelty of the claim, as far as my knowledge goes, resides in the structure termed the book shelf and embracing the features or the combination of elements set forth, and adapted for the purposes described. It does not, as I understand it, necessarily depend upon the novelty of any one or more of the features or elements recited."

The peculiar features claimed for the combination of plaintiff are the frame and the arrangement of the rollers.

The shelf is made of this frame of metal bars and strips, which are rigid, and strong enough, and so arranged as to contain bearings for the rollers as distributed. These rollers are so arranged as to support the book equally throughout and prevent warping. The front rollers extend slightly beyond the front of the frame, preventing abrasion of the book and supporting its back in co-operation with the interior rollers. The front of this frame is carried back, or recessed, so as to leave a space between the two front rollers admitting the hand behind them in grasping the book. Besides forming the bottom of the shelf and supporting the book, the frame braces and supports the light metallic sides of the case in which it is bolted at the required distances. It is claimed that no such frame had ever before been constructed until the shelves of defendant were made in infringement, as alleged, of plaintiff's patent. This claim seems to be borne out by the testimony.

In the evidence taken and the cross-examination of plaintiff's experts the defendant seems to have relied chiefly, if not entirely, upon the Adams patent and the wooden shelf of the clerk's office at Richmond, Indiana.

Both have been described above. In the Adams arrangement only do we find the two forward rollers with a space or recess between them. These, however, perform no such

function as the front rollers of plaintiff's shelf. They are attached to the shelf by a spring; their purpose is claimed to make easy the entrance of the book only. They do not support the book when in, and in fact do not facilitate its entrance, or prevent its contact with the front of the shelf because of the spring upon which they work. Their position prevents the closing or sliding of a door in front of the case. They have no real connection with the system of rollers inside, and the recess between answers no useful purpose. This invention was of so little value that the witness Jewell—one of the inventors of defendant's shelf—was compelled, on cross-examination, to say that it had no practical use·

The Richmond shelf has the hand hole devised for that use only, and without connection with the rollers, or extending back to or between them. Plaintiff does not claim the hand hole as his invention ; but such a novel construction of frame and arrangement of rollers as that he obtains the obvious advantage of the rollers at the front edge of the shelf, set in the frame without springs, and the recess between them by means of which, without weakening the shelf, the hand can be passed behind the rollers to grasp the back of the book.

So far as the remaining patents above set forth are concerned, we have been left to consider them upon their specifications and drawings in comparison with the plaintiff's claims.

Whilst this duty devolves upon the court, it might have been rendered less difficult had the mechanical experts been called upon to point out their several resemblances and differences. *Bischoff* v. *Wethered,* 9 Wall. 812, 815; see, also, *Heald* v. *Rice,* 104 U. S. 737, 749.

In this regard it may be said that defendant's chief object in this case has been not so much to show that plaintiff's patent did not cover an invention, but that it must be so restricted in its scope that his own frame and shelf can not be declared an infringement.

Those other patents have been described above, and after what has been said in respect of the Adams patent and the Richmond shelf, we think it sufficient to say that they do not constitute anticipations of the plaintiff's claims.

Invention consists in the combination of old elements as well as in the discovery of an element entirely new, provided it produces a new and useful result. "New elements in such a patent are not required, and if such a defence were allowed, not one patent of the kind in a thousand of modern date could be held valid." *Parks* v. *Booth,* 102 U. S. 96, 104.

Looking at plaintiff's combination of frame and adjustment of rollers in his patented shelf, in the light of the art as disclosed by the constructions aforesaid, has he produced something new and useful as the result of inventive talent rather than of mere mechanical skill?

As has been well said by the Supreme Court of the United States: "It is not easy to draw the line that separates the ordinary skill of the mechanic, versed in his art, from the exercise of patentable invention, and the difficulty is specially great in the mechanic arts where the successive steps in improvements are numerous, and where the changes and modifications are introduced by practical mechanics." *Krementz* v. *S. Cottle Co.,* 148 U. S. 559.

We have found the answer to the foregoing question one of great difficulty, and it is not without some doubt of its soundness that we have reached the conclusion that plaintiff is entitled to the award of invention.

The very fact of the existence of a reasonable doubt arising on the case made by the defendants, is sufficient to sustain the claim of the plaintiff, for it is well settled that the patent, in actions for infringement, is *prima facie* evidence of invention as well as that the patentee is the original inventor. *Lehnbeuter* v. *Holthaus,* 105 U. S. 94, 96; *Cantrell* v. *Wallick,* 117 U. S. 689, 695; *Gandy* v. *Main Belting Co.,* 143 U. S. 587, 596.

The general superiority and utility of the plaintiff's shelf are reasonably apparent, upon examination of the drawings and models. The desired objects that have been attained by his shelf were in the minds of skilled mechanics working to the same end, and yet no one of these hit upon plaintiff's successful combination of frame and roller adjustment. Grant that, by certain modifications, the Adams, or the Conant, and possibly other inventions might have been made to perform the functions of the plaintiff's, still it is apparent from their drawings and specifications that these were not in the minds of their patentees. They cannot, therefore, upon that ground merely, be regarded as anticipations. *Topliff* v. *Topliff*, 145 U. S. 156, 161.

The evidence tends also to show that plaintiff's shelf, by reason of its superiority, has practically superseded all other roller shelves in the market; and the schedules of sales made by defendant of similar constructions show a wide-extended and increasing market. Now, whilst wide-extended sales and speedy general use are not themselves to be regarded as proving invention, still they have always been recognized as having considerable weight where the existence of patentable novelty is otherwise a matter of doubt. *Krementz* v. *S. Cottle Co.*, 148 U. S. 556, 560; *Potts* v. *Creager*, 155 U. S. 597, 660.

The difficulty before alluded to, that often attends the demarcation of the boundary line between the exercise of ordinary mechanical skill and that of patentable invention, is shown in two series of decisions by the Supreme Court of the United States, some of which counsel in this case, as well as in others, find difficulty in distinguishing from each other.

Among those declaring in favor of the exercise of inventive talent may be mentioned the following: *Smith* v. *Goodyear Dental Vulcanite Co.*, 93 U. S. 486; *Loom Co.* v. *Higgins*, 105 U. S. 580; *The Barbed Wire Patent*, 143 U. S., 275; *Gandy* v. *Main Belting Co.*, 143 U. S. 587; *Topliff* v. *Topliff*, 145 U. S.

156; *Krementz* v. *S. Cottle Co.,* 148 U. S. 556; *Potts* v. *Creager,* 155 U. S. 597. In this last case ·the decisions either way are extensively reviewed. See also *Dubois* v. *Kirby,* 158 U. S. 58, 63.

Among the numerous decisions against the exercise of patentable invention, the following may be enumerated: *Reckendorfer* v. *Faber,* 92 U. S. 347; *Pickering* v. *McCullough,* 104 U. S. 310; *Market St. Ry. Co.* v. *Rowley,* 155 U. S. 621; *Knapp* v. *Morss,* 150 U. S. 221.

From the decision in the last of those cases, Mr. Justice Brown and Mr. Justice Shiras dissented, on the ground that the claim of invention was within the rule of *Loom Co.* v. *Higgins, Topliff* v. *Topliff,* and others, *supra.*

For the reasons before given, we have concluded that the plaintiff's claims call for the application of the doctrine of the first series of cases cited above, and must therefore be awarded the merit .of invention.

This case is clearly distinguishable from that of *Durham* v. *Seymour,* 6 App. D. C. 78. In the first place, the claimant had been denied a patent by the Commissioner of Patents, as well as by the trial court, and the burden of showing patentable invention was heavily upon him. In the second and most important place, whilst his combination was one of merit, it was plain that there was no new arrangement by which any one of the old devices had been made to operate differently, or more effectively, than when used separately. Besides, the most important of these devices had been patented to him separately, and the very important part of his combination, namely, the mode of supporting the entire system of drainage, had been unquestionably anticipated.

We have not been unmindful of the opinion expressed by Judge Lacombe in *Fenton Manufacturing Co.* v. *Chase,* 73 Fed. R. 831. On the contrary, that has been the chief occasion of the doubt heretofore expressed in respect of the soundness of our conclusion. The question of patentability

came before the learned judge upon motion for preliminary injunction, unaccompanied by the evidence which this record contains, and the order was, of course, not final.   Upon the presentation there made, Judge Lacombe seems to have entertained the idea that the claim was for the "hand hole" made by the re-entrant bend or recess of the front part of the frame.

This is quite different from what we have conceived to be the claim of the patentee and the merit of his combination.

Our conclusion is, we think, supported also by the following recent decisions in the circuit courts of appeals for the third and eighth circuits: *Taylor* v. *Sawyer Spindle Co.*, 75 Fed. R. 301; *Mast, Foos & Co.* v. *Dempster Mill Manufacturing Co.*, 82 O. G. 338.

2. There can be no doubt that, under the well-established rule in such cases, the claims of the Hoffman patent should be restricted to the specific combination described.  *Knapp* v. *Morss*, 150 U. S. 221, 228, and cases cited therein.   Consequently, if the shelves as manufactured and sold by the defendant show a substantially different combination, or one omitting one of the elements of the plaintiff's, there can be no infringement.

Applying this test to the facts, we find that the rigid frames of each construction are sustantially the same. Whilst the strips of one run at different angles from those of the others, the object and effect are identical.   These have the same bearings for the rollers and a like adjustment of the latter for the support of the book.

The difference contended for by the defendant is pointed out in the front bar of the frame.

In the Hoffman shelf the space between the front rollers is made by bending back the front strip or bar.   In that of defendant the same thing is accomplished by fastening the two front rollers to the strip by means of a bracket.

There is no difference of purpose, effect or operation be-

tween the two shelves as thus constructed. We can not agree to the contention that [the Hoffman claims must be limited to a shelf showing a recess between the front rollers made by bending back the front strip and in no other way. The defendant's recess made by fastening the two front rollers in a bracket riveted to the front strip is but another simple, mechanical means by which the intermediate part of the frame is "carried back to permit the admission of the hand between the roller sections," as set forth in the plaintiff's second claim. There is no new element introduced, no new or different result accomplished, no improvement made by this slight change in construction; and we must regard it as a colorable evasion merely.

"It a is well-known doctrine of patent law, that the claim of a combination is not infringed if any of the material parts of the combination are omitted. It is equally well known that if any one of the parts is only formally omitted, and is supplied by a mechanical equivalent, performing the same office and producing the same result, the patent is infringed." *Water Meter Co.* v. *Desper*, 101 U. S. 332, 335; *Fay* v. *Cordesman*, 109 U. S. 408, 421; *Seymour* v. *Osborne*, 11 Wall. 516, 556; *McClain* v. *Ortmayer*, 141 U. S. 419, 425.

3. The next point in defendant's appeal arises on the exceptions taken to the auditor's report of the damages assessed on account of the profits realized on sales of the two infringing constructions specifically named in the decree. Little, if anything, could be added to the statement of the auditor explaining the grounds of his findings. The burden of proof was upon the plaintiff, and he undertook to satisfy it by examining certain officers and agents of the defendant corporation and requiring statements from the books, showing cost, sales, prices, and so forth. Whatever uncertainty there was in arriving at the real profits was due to the business methods of the defendant and the character of the statements made by its officers in explanation thereof. The auditor's statement of the process by which he ascer-

tained the sum reported is plain and careful, and we see no reason to disturb his conclusion. Like him, we perceive no conflict between that conclusion and the decision in *Keystone Mfg. Co.* v. *Adams,* 151 U. S. 139.

4. The last question for determination is that arising on the plaintiff's appeal from so much of the decree as refused him recovery of the damages found by the auditor on account of the sales made by the defendant of what is called his "New No. 4 Shelf."

The defendant's exceptions were founded and sustained upon the ground that the inquiry into the sales of this construction were not within the terms of the decree declaring the infringement and referring the matter of damages thereby sustained to the auditor.

In this we think the court erred. Whilst that decree expressly mentioned the two constructions designated as No. 17 of defendant's catalogues and "Exhibit Hausman's sketch," it was not necessarily limited so as to cover them alone.

This new No. 4 shelf is substantially the same as the other two. It has the same roller bearing frame, with the two front rollers in brackets riveted to the remainder of the frame. There is only a slight difference in form embodying no difference whatever in purpose, effect, or operation. The journals of the front rollers, instead of working in a bracket formed by an extension of the end bar of the frame and a riveted piece near the center, as in the two described constructions, revolve in a single piece bent forward at each end for the purpose; that is, riveted to the bar coming behind it. The ends being bent forward at right angles make a square recess between the two front rollers instead of the elliptical shaped recess of the other two and of plaintiff's shelf. We agree with the auditor that this is but a colorable change of form, and that it therefore comes within the scope of the decree and the reference.

The authorities which he cites fully sustain his views of

his duty and authority in the premises. *Turrill* v. *I. C. R. Co.*, 5 Bissell, 344; *Knox* v. *G. W. Q. M. Co.*, 6 Sawyer, 430, 436; *Ball Glove Fastening Co.* v. *Ball & Socket Co.*, 53 Fed. R. 245; *Wooster* v. *Thornton*, 26 Fed. R. 274.

The evidence supporting his finding of the amount of the damages under this head is like that in support of the first item, which we have declared to be satisfactory.

It follows from what has been said, that so much of the decree as has been appealed from by the defendant below must be affirmed, and so much of it as has been appealed from by the complainant must be reversed, with costs to the latter. The cause will therefore be remanded with directions to reform the decree below by vacating so much thereof as sustains the exceptions to the master's report, and by decreeing recovery by the complainant of the amount reported by the auditor as damages on account of the infringement of his patent by defendant's "New No. 4 Shelf." *It is so ordered.*