KILMER MANUF'G CO. v. GRISWOLD et al.

(Circuit Court, N. D. New York. June 16, 1894.)

1. PATENTS—LIMITATION OF CLAIM—BALE TIES.

In the Kilmer patent, No. 282,991, for improvement in bale ties, claim 2, for a clasp of wire larger than the band wire, and having a pinching angle to hold tightly the band when forced into it by expansion of the bale, must be confined to the precise mechanism described, in view of the prior state of the art, as shown by the Smith patent, which has the same features except that the clasp is "of wrought iron, malleable iron, or other suitable material," and other patents using a clasp of round wire larger than the band.

2. SAME—INVENTION.

The Kilmer patent, No. 372,375, for an improvement upon No. 282,991, relating to bale ties, in adding to the wedging action of the clasp of that patent a gripping action giving additional power, involves invention, the fundamental idea being new as applied to bale ties, notwithstanding devices performing similar functions were known in analogous arts, as shown in the Foote patent, No. 139,899, and other patents.

3. SAME—INFRINGEMENT.

The Kilmer patent, No. 372,375, for an improvement in bale ties, having first introduced the jamming or wedging action of the sides of the clasp upon the band wire, is entitled to a construction liberal enough to protect that invention, and hence is infringed by ties made under the Griswold patent, No. 466,563, having a clasp differing in form from the Kilmer clasp, but like it in principle, possessing all its features, and operating in substantially the same manner.

This was a suit by the Kilmer Manufacturing Company against J. Wool Griswold and others for infringement of patents.

S. A. Duncan and W. H. Van Steenbergh, for complainant.
E. H. Brown, for defendants.

COXE, District Judge.   The complainant, as the owner of two letters patent granted to Irving A. Kilmer for improvements in adjustable bale-ties, brings this bill against the defendant for infringement.   The first of these patents, No. 282,991, is dated August 14, 1883, the second, No. 372,375, is dated November 1, 1887.

## No. 282,991.

In the specification the patentee says:

"The object of the invention is to produce a device in which the loose end of the band-wire, when put in place, shall be clasped or gripped so as to preclude unintentional separation, and in which the parts in contact will not be cut or broken."

The clasp is made of wire of a size considerably larger than the band-wire.   The wire of the clasp is bent at the middle, forming a sharp V-shaped recess.   The two ends of the wire so bent are returned upon themselves and bent over the looped end of the band-wire, which is thus permanently attached to the clasp.   In use the band-wire is placed around the bale, the free end is slipped into the V-shaped recess and is then bent back and twisted about itself.   As the bale is released from the press it expands and this pressure on the band tends to force the wire down into the angle, which, being smaller than the wire, pinches the wire tightly and prevents it from slipping or pulling out.   The clasp being of round wire has no sharp cutting edge and the band-wire is in no danger of being abraded or broken.   The claim relied on is the second. It is as follows:

"In a bale-tie, a clasp, B, made of wire larger than that of the band and having the pinching angle b, as set forth."

The defenses are lack of novelty and invention and noninfringement.

The complainant's brief contains the following concise proposition:

"In order to anticipate the invention covered by the first Kilmer patent it is necessary to find in the prior art a bale-tie having the following characteristics: 1. A band made of wire. 2. A clasp made of wire and of larger gauge than that of the band.  3. A pinching angle formed in the wire clasp. By 'pinching angle' in this connection is meant an angle formed by bending the wire composing the clasp into the form of a V having an apex smaller than the diameter of the band-wire, so that the wire will be pinched by the mere forcing of the wire down into such angle, irrespective of any inward movement of the sides of the clasp."

Turning to the patent granted to Isaac T. Smith, February 2, 1875, for an improvement in bale-ties, it will be found that all of these features are present, except that the clasp is not, apparently, made of wire.   The band is made of wire, the clasp is made "of wrought-iron, malleable iron, or other suitable material having its ends bent over on top, forming a double hook," etc.   Material having the properties described may very properly, upon the testimony in this cause, be called wire.   The complainant's brief, in discussing the question of infringement, says, on this subject:

"Contrary to defendants' contention, the saddle of the Griswold tie is made from a strip of metal which is properly designated as 'wire.' Two reasons seem to have influenced defendants' experts in declaring that this saddle-piece is not made from 'wire;' first, that it is not cylindrical, and, second, that it does not appear to have been made by the process of 'drawing.' (1) The first of these reasons is disposed of by the definition of the term 'wire' and the several illustrations of the different forms of wire taken from Knight's Mechanical Dictionary. Knight says: 'Wire is usually cylindrical, but it is also made of various other forms, as oval, half-round, square and triangular, and of more complicated shapes for small pinions,' etc. Among the illustrations given by Knight are various forms where the wire is saddle-shaped in cross section, very much like the saddle of defendants' tie. A reference to the Pendleton and Proctor patents on cotton-gin saws shows that the term 'wire' is frequently used to designate the strips of flat metal out of which cotton-gin saws are made. Mr. Lenox, one of the defendants' witnesses, and who is connected with the bale-tie business of the Washburn & Moen Mfg. Co., says that the term 'wire' is applied to flat goods as well as cylindrical. He says: 'We receive orders for flat wire of all dimensions up to an inch or thereabouts in width.' (2) Equally erroneous is the statement of defendants' expert Mr. Brevoort, that the saddle of defendants' tie is not 'wire,' because it has not been made by 'drawing.' "

It is apparent, therefore, that a clasp made of wire would be within the Smith patent. The Smith clasp is made of material that may be "bent over" and it is of larger guage than the band-wire. There is also a pinching angle formed in the clasp. Indeed, the description of the Smith device applies equally well to the Kilmer clasp. The specification of the Smith patent says:

"When the bale is pressed and the wire passed around the same, the ends of the wire are bent and passed through the central top opening, a, into the V-shaped recesses, b, b. When the pressure is removed from the bale the bale at once expands, drawing the wires into the V-shaped recesses and pinching them tightly therein, so that they cannot slip out from the same."

Assuming that this patent does not anticipate, the remaining question is whether it required invention to substitute a clasp made of round wire for the clasp "of wrought-iron, malleable iron or other suitable material," of the Smith patent. It is, perhaps, an improvement to present rounded pinching edges to the band-wire, but it required only mechanical skill to do this. No new function is performed. There is no proof regularly before the court that the Smith clasp will break or cut the wire of the band. Assume that it would. A workman of ordinary capacity, on discovering the defect, would know enough to round off the sharp edges which injure the wire. Again, Kilmer was not the first to use a clasp of round wire larger in diameter than that of the band. Such a clasp is shown in the Lowber patent of 1868, the Trowbridge patent of 1869, the Knipscheer patent of 1878 and the Griswold patent of March, 1883. Indeed, wire was the most natural material to use. I cannot avoid the conclusion that the fundamental principle underlying the Kilmer patent of 1883 is disclosed by the Smith patent—the idea is all there. Smith describes a bale-tie, having a wire band, a clasp of larger gauge than the band and a V-shaped recess in the clasp into which the band-wire is pressed by the expansion of the bale. Grant that Kilmer has embodied this idea in a more practical and perfect device, did it require in-

vention to do this? The defects which, it is suggested, are found in the Smith clasp would develop immediately, upon the proper test being applied, and the remedy would at once occur to the skilled workman, especially when the prior art abounds with clasps made of large round wire. The Smith patent was not discovered until after the final hearing, but counsel have had full opportunity to examine and discuss it. The other references offered by the defendants when aggregated show all that the Smith patent shows, but in the opinion of the court no other reference shows so many of the features of the Kilmer patent in combination. The court is constrained to hold, therefore, in view of what the prior art discloses, that, if sustained at all, the second claim of No. 282,991 must be confined strictly to the precise mechanism shown. Sargent v. Covert, 67 O. G. 403, 14 Sup. Ct. 676; Belding Manuf'g Co. v. Challenge Corn-Planter Co., 67 O. G. 141, 14 Sup. Ct. 492; Giles v. Heysinger, 150 U. S. 627, 14 Sup. Ct. 211; Saunders v. Allen, 60 Fed. 610; Manufacturing Co. v. Walbridge, Id. 91; Manufacturing Co. v. Weeks (C. C. A.) 61 Fed. 405.

## No. 372,375.

This patent is for an improvement upon No. 282,991. To the clasp of the former is added a closing action which gives additional power to the holding feature of the clasp. Instead of being returned upon themselves the ends of the improved clasp are separated some distance apart, giving the clasp a V-shaped appearance. The clasp is secured to a loop in the band-wire. In use, the free end of the band is inserted in the pinching angle as in the former patent. When the bale is released the strain not only pulls the band down into the angle, but also pulls the ends of the clasp together, making the vertex of the angle more acute, thus nipping the band-wire between the sides of the clasp. The merit of this action is that it holds the band-wire tightly the moment the strain is applied. The claim relied on is as follows:

"2. The band A, having the clasp B, with the angle $b^5$, and its ends b apart, as set forth."

The defenses are the same as those urged to the previous patent. The question, therefore, is whether it required invention to add the gripping action of this clasp to the wedging action of the clasp of the prior patent? The court is of the opinion that it did. Kilmer was the first to employ a clasp having this feature in a bale-tie. Devices performing somewhat similar functions were known in analogous arts, but its first appearance in a bale-tie having a wire band was in this patent. The fundamental idea of the former patent was old as applied to bale-ties; the fundamental idea of this patent was new as applied to bale-ties. It originated with Kilmer. This proposition cannot be successfully disputed.

The device of the Foote patent (No. 139,899) does not anticipate or negative patentability for the following reasons:

First: It is designed for use by hand in tying up bundles of grain having little or no resiliency or expansive power.

Second: The band is made of cord and not of wire. The cord is of about the same diameter as the wire of the "holder."

Third: The cord, after being carried around the bundle and drawn tight, slides down between the converging sides of the holder and is pinched between them, but the pinching sides are substantially parallel. They do not form a V-shaped recess. In the Foote holder, also, the free end of the cord is apparently left in the direction of the pull, thus giving a long diagonal bearing on the side of the "holder." As shown in the drawing it is not turned back and tucked under the "standing" part of the band as in the Kilmer tie.

Fourth: The Foote tie would be wholly impracticable as a bale-tie of the class to which the Kilmer tie belongs. If the "holder" were made of much larger wire, and wire were substituted for the binding cord, it is possible that it might answer as a bale-tie. But it would be clumsy and ineffectual. The defendants, and all others, are at liberty to use such a tie, but it is thought that no one having the slightest knowledge of the art would substitute such a device for the Kilmer tie. The difference between them is all the difference between a botch and a success.

Fifth: The Foote specification speaks of the converging sides of the "holder" being drawn together by the strain of the bundle, but this convergence, if it exists, does not produce the gripping action of the Kilmer clasp. When the strain is applied the first effect is to open the holder, afterwards the sides are slightly drawn together by a longitudinal pull. They are not jammed together, to any appreciable extent, by a lateral pull also. It is this pronounced action of the sides of the Kilmer clasp, holding the band-wire as in a vise, that distinguishes it from all prior structures.

Sixth: The action of the Foote holder under strain would be most unsatisfactory in a bale-tie. In short, the general conclusion arrived at by the expert witness for the complainant is, I think, substantially correct. He says:

"The Foote holder is designed to be used, as before explained, with a cord, in which the sides, B, B¹, of the holder can readily imbed themselves upon the application of a small amount of strain, which is in the vicinity of about five pounds; while the Kilmer clasp is designed to be used with metal, which, if compressed at all, is compressed only by the application of great force; and, therefore, the two holders have to act upon different principles or modes of operation in order that they may serve the function each was designed to serve. That is, the Foote holder cannot be used as described in the Kilmer patents in suit—with a cord, as a bale-tie, for baling hay and similar substances; nor can the Kilmer clasp be used as described in the Foote patent—in a band or tie for binding grain and similar substances. In other words, the Foote holder cannot be substituted for the Kilmer clasps, nor can the Kilmer clasps be substituted for the Foote holder. Each must be used in its own place to do its own peculiar work."

The other references add little to the Foote patent. It is true that some patents for garment supporters show the drawing-in action referred to, but these devices are so different in structure, purpose and function, that they deserve only a passing mention. The Kilmer clasp has become popular and has largely taken possession of the market. It is cheap, durable, reliable and efficient.

Without dwelling longer upon this branch of the case it may be asserted with confidence that every argument which was used to sustain the barbed wire patent applies with much greater cogency to the patent at bar. Barbed-Wire Case, 143 U. S. 275, 12 Sup. Ct. 443, 450. The facts in that case were quite analogous to the facts here except that the prior art approximated more closely to the patent in that case and the field of invention was, therefore, much narrower. If the Kelly patent were insufficient to defeat the Glidden patent it seems very clear that the Foote patent is insufficient to defeat the Kilmer patent. See, also, Krementz v. Cottle Co., 148 U. S. 556, 13 Sup. Ct. 719; Topliff v. Topliff, 145 U. S. 156, 12 Sup. Ct. 825; Gandy v. Belting Co., 143 U. S. 587, 12 Sup. Ct. 598; Richardson v. Shepard, 67 O. G. 144, 60 Fed. 273.

### Infringement.

The defendants' ties are made under letters patent No. 466,563, granted to the defendant J. Wool Griswold, January 5, 1892. Their clasp though differing in form is, in principle, like the clasp of the patent, possessing all its features and operating in substantially the same manner. In the defendants' tie the band is made of wire. The clasp, reinforced as it is by a metal saddle, is of larger dimension than the band-wire. It has the V-shaped pinching angle, and when the strain is applied the sides of the clasp close in and the end of the band wire is "jammed or wedged therein" precisely as in the complainant's device. Not only does the Griswold patent expressly declare over and over again that this jamming action exists, but the proof of actual tests demonstrates its existence. As Kilmer was the first to introduce this principle into bale-ties, he is entitled to a construction liberal enough to protect his invention. He should have what he has invented, nothing more, nothing less.

The complainant is entitled to a decree upon the second claim of No. 372,375 for an injunction and an accounting, but without costs.