### BRADLEY v. ECCLES.

(Circuit Court, N. D. New York. June 12, 1905.)

PATENTS—INVENTION—THILL COUPLING.

    The Bradley patent, No. 485,856, for a thill coupling, consisting of a spherical knuckle on the end of the thill iron, and a draft eye composed of two parts, one rigid and one movable, hinged together at the front end, and having a spherical cavity in which the knuckle fits, was not anticipated, and discloses invention. Claims 1 and 2 also *held* infringed.

In Equity.

Suit in equity to restrain alleged infringement of United States letters patent No. 485,856, granted to Christopher C. Bradley November 8, 1892 (application filed August 10, 1891, serial No. 402,-203), for "Thill Coupling." The defendant alleges three defenses: Anticipation, want of invention, and noninfringement.

Howard P. Denison, for complainant.
William A. Megrath, for defendant.

RAY, District Judge. The patent in suit, No. 485,856, dated November 8, 1892, is for a new and useful improvement in thill couplings. Say the specifications:

"This invention relates to that class of thill-couplings which are provided with a divided draft-eye, a coupling pin or wrist, and a clamping device connected with the draft-eye, whereby the latter is tightened and the thills are enabled to be attached to or detached from the vehicle in an expeditious man-

ner. Heretofore the coupling wrist or pin was of cylindrical form and provided with collars, whereby lengthwise movement of the wrist in the draft-eye was prevented. The wear upon the cylindrical surface of the wrist was automatically taken up by the clamping device, but any wear on the collars permitted the wrist to move lengthwise in the draft-eye and caused rattling.

"The objects of my invention are to produce a thill-coupling of this character in which the shoulders for preventing lengthwise movement of the wrist in the draft-eye are dispensed with, so as to avoid rattling; also to provide a lubricating device whereby the bearing-surfaces of the wrist and draft-eye are lubricated in a simple and convenient manner; also to provide means whereby the thill-iron is prevented from becoming detached from the draft-eye when the clamping device of the latter becomes broken.

"The wrist of the thill-iron consists, preferably, of a spherical knuckle connected with the thill-iron by a narrow neck, k, and seated in correspondingly shaped sockets or bearing-surfaces formed in the draft-eye sections. This form of wrist permits the thill to rock freely in any direction in the draft-eye and wear the parts uniformly, without causing any rattling, owing to the tension of the spring, I, which exerts a constant pressure upon the sections of the draft-eye, thereby centering the wrist and preventing the same from moving laterally in the draft-eye.

"Heretofore the wrist of the thill-iron was cylindrical in form, and provided with collars bearing against opposite sides of the draft-eye sections, between which the cylindrical wrist was clamped. These shoulders wore rapidly, owing to the lateral strain applied to the wrist by the great leverage of the thills, so that the parts soon became loose.

"In constructing the thills with cylindrical wrists, it is extremely difficult to secure the thill thereto so that the wrists are axially in line. When the wrists are not in line, it becomes necessary to spring them into place in the draft-eyes. This causes a constant strain and wear upon the wrist and its collars, which eventually permits the wrist to move lengthwise in the draft-eye, and causes rattling.

"The spherical form of the thill-iron wrist and of the sockets in the draft-eye sections permits the wrists to adjust themselves freely within certain limits without binding or cramping, and compensates for any inaccuracies in the relative position of the draft-eyes and the wrists of a pair of thills. The spherical form of the wrist and the draft-eye section embracing the same also increases the bearing-surfaces between these parts, and causes them to wear longer. A similar result is produced by forming the wrist in the shape of an oval, as represented in Fig. 4, or with a conical taper toward opposite ends, as represented in Fig. 5, in both of which modifications the draft-eye sections are provided with correspondingly shaped cavities, and the wrist is centered upon drawing the eye-sections together."

There are three claims in this patent, viz.:

"(1) The combination with the thill-iron, provided with a wrist or knuckle having its face rising from its ends toward its middle, of a clip provided with a rigid eye-section and a movable eye-section hinged to the front end of the rigid section, both sections embracing said wrist and provided with corresponding bearing-surfaces, a tension-spring secured with one end to said clip, a clamping-lever pivoted to the opposite end of said spring, and a loop connecting the movable eye-section with said clamping-lever, substantially as set forth.

"(2) The combination with the thill-iron, provided with a wrist or knuckle having a convex spherical surface, of a clip provided with a forwardly-projecting rigid eye-section, a movable eye-section hinged with its front end to the front end of the rigid eye-section, both eye-sections embracing said wrist and provided with corresponding concave spherical bearing-surfaces, a tension-spring secured with one end to said clip, a clamping-lever pivoted to the opposite end of said spring, and a loop detachably connecting the rear end of said movable eye-section with the clamping-lever, substantially as set forth.

"(3) The combination with the wrist, having a recess in its bearing-surface, of an absorbent plug arranged in said recess, and a draft-eye embracing said wrist, substantially as set forth."

Claims 1 and 2 only are involved here. In the original application filed three other claims were included, viz.:

"(1) In a thill coupling, the combination with the wrist or knuckle, having its face rising from its ends toward its middle, of a draught eye provided with a movable section, and a clamping device whereby the draught eye is tightened upon the wrist, and the latter is centered in the draught eye, substantially as set forth."

"(4) The combination, with the wrist, of a draught eye provided with a movable section, a stop whereby the opening movement of said movable section is limited, and a clamping device whereby the draught eye is tightened upon the wrist, substantially as set forth."

"(5) The combination with the thill iron, provided with a wrist, of a forwardly projecting rigid eye section provided with a shoulder on its front side, a movable eye section hinged with its front end to the front end of the rigid eye section, a stop formed on the front end of the movable eye section, and adapted to strike against the shoulder of the rigid eye section and thereby limit the opening movement of the movable eye section, and a clamping device whereby the draught eye sections are tightened upon the wrist, substantially as set forth."

These were rejected by the Patent Office, the first one on Smith patent No. 305,539, of September 23, 1884, and the others on patent to Smith and Pride, No. 328,726, of October 20, 1885. Thereupon Bradley, the applicant, amended his application by erasing and dropping the rejected claims. The claims allowed stand as in the original application, without modification or limitation.

The defendant has not shown that the prior United States patents now relied on to show anticipation, etc., were not called to the attention of the officials and examiners in the Patent Office. There is no legal presumption that such examiners were ignorant of their existence. An examination of the evidence and exhibits shows beyond any question whatever that the defendant here is using and vending the exact construction and combination covered by the complainant's patent. The defendant's expert was asked, "Do you find in the prior art any one patent, publication, or construction which embraces each and all of the elements of either claims 1 and 2 of the patent in suit?" He answered, "No, if by each and all of the elements you include the thill coupling of the Hannan patent provided with either, broadly, a wrist, a knuckle having its face rising from its ends towards the middle, or, specifically, a knuckle having a convex spherical surface with corresponding seats in its draft-eye sections." Defendant's expert was then asked, "And I suppose that, if claims 1 and 2 of the patent in suit are valid, complainant's exhibit," defendant's thill coupling, "would come within the terms of claims 1 and 2, would it not?" The answer was "Yes." The real question in this case is, in view of the prior art, does the patent in suit disclose patentability? Conceding that each element of the combination is to be regarded as old, still have we not a new combination producing new or vastly improved results in a new way? The prior art indicates that others had had in mind the possibility of using in thill couplings a thill iron provided with a wrist or knuckle having a convex spherical surface, or something of that kind, and also eye sections provided with corresponding concave spherical bearing surfaces embracing such wrist or

knuckle, but fails to show that such element had been practically used in a thill coupling. Its necessity in the art was recognized fully just as soon as the element was introduced by Bradley into his combination. The new combination proved a great success. It removed inconveniences, and did away with annoyances and dangers attending the use of the prior devices. The necessity for something of the kind was known before. Bradley found what was wanting in the combination, and found a way to introduce it therein, and have as a result a practical, cheap, safe, and exceedingly useful coupling. This spherical form of the knuckle, inclosed as it is in the corresponding sockets, allows the wrists of the thill irons, and consequently the thills, to accommodate themselves to the movements of the horse. As a consequence, there is no wringing and twisting of the iron wrist and knuckle in the socket, no undue friction and wearing away of the parts and consequent weakening of the parts. The wearing spoken of is, of course, followed by rattling and danger of breaking; here we have no wearing loose by unnecessary friction. The natural movements of a horse in harness hitched to a vehicle tend to work the knuckles not only up and down, but sidewise in the sockets. This spherical form permits a free rolling movement in all directions without strain. It may seem simple now. The placing the point in the heavens to catch the lightning seems simple now. It is easy to confine and utilize the steam now—after it is done. Eccles followed Bradley, and took, and takes and uses, what he invented and secured by letters patent. If there was patentable invention in the case of Washburn and Another v. Barbed Wire Company, 143 U. S. 275, 12 Sup. Ct. 443, 36 L. Ed. 154, there is invention here. In Krementz v. Cottle, 148 U. S. 558, 13 Sup. Ct. 720, 37 L. Ed. 558, the court said:

"It is not easy to draw the line that separates the ordinary skill of a mechanic, versed in his art, from the exercise of patentable invention; and the difficulty is specially great in mechanic arts, where the successive steps in improvements are numerous, and where the changes and modifications are produced by practical mechanics. In the present instance, however, we find a new and useful article, with obvious advantages over previous structures of the kind."

It was much more than the ordinary skill of the mechanic versed in the art, or even the extraordinary skill of the mechanic, that did what Bradley did here. It was invention, and complainant is entitled to the benefit of his thought and work.

The defenses are not sustained, and complainant is entitled to a decree for an injunction and an accounting.