## BOURKE et al. v. BUEGELEISEN.

District Court, S. D. New York.   March 22, 1926.

1. Patents ⚖₃₂₈—No. 1,361,360, for violin string tensioning device, held invalid for want of invention.

Bourke patent, No. 1,361,360, for violin string tensioning device, *held* invalid for want of invention.

2. Patents ⚖₃₆(1)—Novelty and utility alone do not necessarily import patentable invention.

Where change from previous construction of a device is desired and made only to cheapen cost, patentable invention should not be inferred from novelty and utility of the new structure alone.

In Equity.   Suit by William Bourke and Leigh Arthur Elkington against Samuel Buegeleisen, doing business as Buegeleisen & Jacobson.   Decree for defendant.

Suit for infringement of patent No. 1,361,360, issued December 7, 1920, on application filed July 16, 1919, to William Bourke, for a violin string tensioning device. In this device the string is attached to the upright arm of an L-shaped tensioning lever, fulcrumed in the socket of a base plate attached to the underside of the tailpiece of a violin, the lever being operated by a thumbscrew which passes through the tailpiece and the base plate, so as to come in contact with the horizontal arm of the lever which extends under the base plate. By turning the thumbscrew, the tension on the string can be precisely adjusted through the operation of the lever. Such devices were long in use prior to the issue of the patent in suit, and the invention, if any, can relate only to those features of Bourke's combination which provide a fulcrum for the operation of the L-shaped lever in the base plate itself without the use of a pivot pin.

Specifically the patent claims cover a lever which has: "integral rocking means at the fulcrum of said lever" (claim 1); "a reduced portion fulcrumed in said socket and having a rounded projection at its fulcrum about which the lever rocks" (claim 2); "a reduced portion provided with oppositely disposed rounded projections at its fulcrum" (claim 3); "a reduced portion provided at its fulcrum with oppositely disposed rounded projections, and

also provided with guiding projections to prevent up and down movements of the lever in relation to said socket" (claim 4); "having a reduced portion provided at its fulcrum with oppositely disposed rounded and integral projections at said fulcrumed portion, and also provided with integral guiding projections whereby up and down movement of the lever in relation to said socket is prevented" (claim 5).

The defendant is a dealer in musical instruments and devices, and is charged with infringement because of the sale of devices purchased from E. Hafelfinger & Son. This firm was composed of Emil Hafelfinger, the father, and Frederick E. Hafelfinger, the son. They were musicians employed in one of the theaters in New York City. In a small room connected with their home in Weehawken, N. J., they had a small workshop where in 1910 they began making musical instruments. In 1915 they found on the market a violin string tensioning device which was manufactured in accordance with Duval's French patent No. 441,058, issued in 1912. In this device the L-shaped lever operated precisely as described in Bourke's patent, except that the fulcrum provided was a pivot pin passing through the base plate and the upright arm of the lever; the plate being cut with an open end to receive the lever arm. The Hafelfingers, finding upon inquiry that these devices were not covered by any United States patent, commenced to manufacture them in their home. Their first sales were made in March, 1915, at which time the upright arm of the lever was flattened at the place where the pin was inserted. Shortly thereafter they improved the device by flattening the upright arm, so as to leave shoulders just above and below the base plate, which would come in contact with the plate, so that the lever would line up with the hole in the plate, thus facilitating the insertion of the pin.

In June, 1916, Hafelfinger, Sr., constructed a tensioning device without a pivot pin, simply by inserting the lever in the slit at the end of the base plate and pressing the metal together around it. This form of construction was found practicable, but was not adopted, because it was felt that the construction was too weak with a split end, and they desired to make as serviceable an article as possible, since they were getting good prices and there was no compelling reason at that time for the adoption of a cheaper form of construction. Furthermore, they did not consider the device without the pin adaptable to automatic manufacture, because of the necessity, in order to

22 F.(2d)—14

make a good job, of rounding the end of the plate. At that time they were selling the devices for 35 cents apiece, whereas they are sold to the jobbers to-day for from 3 cents to 5 cents apiece. The crude devices thus fashioned by Hafelfinger, Sr., incorporated all the mechanical elements of the combination claimed in Bourke's patent, except the integral rounded projections of the lever at its fulcrum. These devices were, however, only shop models, which were put to no practical use, and were abandoned for the reasons stated.

Among Hafelfinger's customers was a firm of jobbers known as Perlberg & Halpin, who also did business with the plaintiff Elkington. In November, 1918, these jobbers showed Elkington one of the Hafelfinger tensioning devices with the pivot pin construction, and asked if Elkington could make such a device to sell for about 10 cents apiece. At that time, Elkington testifies, the jobber's price was from 25 cents to 35 cents apiece, while the retail price was in the neighborhood of 75 cents to $1 each, and at one time during the war the jobbers had paid as high as $3 apiece. Thereafter Elkington submitted the device to Bourke, who had a machine shop, asking him if he could make such a device to sell for 10 cents. In a couple of hours Bourke made a model of the device covered by the claims of his patent. This was on Armistice Day, in November, 1918. Shortly thereafter orders were accepted for these devices and the plaintiffs commenced the manufacture of them. In the previous January the Hafelfingers claim to have made models of the devices covered by their patent No. 1,361,049, which was designed, not only to eliminate the pivot pin, but also to eliminate the split in the end of the base plate, which they had regarded as objectionable. Bourke's application was filed July 16, 1919, and Hafelfinger's July 24, 1919, and patents were issued upon both applications on December 7, 1920. The alleged infringing devices were made under and in accordance with the Hafelfinger patent.

Frederick P. Randolph, of New York City, for plaintiffs.

Dean, Fairbank, Obrieght & Hirsch, of New York City (Clair W. Fairbank, of New York City, of counsel), for defendant.

THACHER, District Judge (after stating the facts as above). [1] There is nothing in the claims not found in the prior art, except the "integral rocking means at the fulcrum of said lever"; that is, the integral side pro-

jections which support the lever upon the plate, and the integral rounded projections at its fulcrum which allow it to turn in the socket. Bourke's device intrinsically is no better than the devices of the prior art. All that is claimed for it is that it costs less to manufacture, and there is no doubt that the elimination of the pivot pin substantially reduced the cost of manufacture. To eliminate the pin without eliminating its function, it was only necessary to notch the lever, so as to support it in the base plate, and slightly round its edges, so as to permit it to turn in the socket. The only mechanical ingenuity disclosed was in the method devised for cutting and assembling the two parts automatically. But the method of cutting and pressing the metal is not covered by any of the claims.

Notching the lever, in order to support it, and rounding its edges, in order to permit it to turn on its fulcrum, were means within the knowledge and experience of any person possessing the slightest mechanical skill. Indeed, it is fair to say that they are hardly beyond the ken of almost any boy, who has whittled a stick or constructed a figure 4 trap. The fulcrum provided in the place of the pivot pin is so simple and rudimentary as to be utterly lacking in invention, and Bourke's improvement falls within the rule in Atlantic Works v. Brady, 107 U. S. 192, at page 200, 2 S. Ct. 231 (27 L. Ed. 438):

"The design of the patent laws is to reward those who make some substantial discovery or invention, which adds to our knowledge and makes a step in advance in the useful arts. Such inventors are worthy of all favor. It was never the object of those laws to grant a monopoly for every trifling device, every shadow of a shade of an idea, which would naturally and spontaneously occur to any skilled mechanic or operator in the ordinary progress of manufactures. Such an indiscriminate creation of exclusive privileges tends rather to obstruct than to stimulate invention. It creates a class of speculative schemers, who make it their business to watch the advancing wave of improvement, and gather its foam in the form of patented monopolies, which enable them to lay a heavy tax upon the industry of the country, without contributing anything to the real advancement of the arts. It embarrasses the honest pursuit of business with fears and apprehensions of concealed liens and unknown liabilities to lawsuits and vexatious accountings for profits made in good faith."

[2] This is not the case of an inventor who discovers a simple solution of a problem, which many others have long vainly sought to solve. It is, on the contrary, a case where, until the plaintiff's entry into the field of the art, there was no reason for sacrificing strength to cheapness of construction. The result which Bourke accomplished was never before attained, because never before sufficiently desired to overcome the inertia of habit following the old methods, which were quite good enough, and perhaps better than the new, until competition demanded cheaper costs. Novelty under these circumstances is of little probative value in determining the question of invention. There being a very simple and obvious explanation of the fact that this improvement was not adopted before by those engaged in the manufacture of such devices, such cases as Loom Co. v. Higgins, 105 U. S. 580, 591, 26 L. Ed. 1177, Krementz v. S. Cottle Co., 148 U. S. 556, 559, 13 S. Ct. 719, 37 L. Ed. 558, and Potts v. Creager, 155 U. S. 597, 608, 15 S. Ct. 194, 39 L. Ed. 275, are not controlling. Neither Bourke nor any one else had any difficulty in substituting for the pivot pin an integral fulcrum, as soon as it became desirable to do so.

It may be assumed, but not decided, that the proof in support of the defense of prior invention is insufficient, because all of the witnesses might possibly have been mistaken as to dates; but this testimony remains to demonstrate the fact that Hafelfinger, without instruction from the patent in suit, found no difficulty in eliminating the pivot pin, and it is quite obvious that the reason why the improvement was not adopted long before is that the old device was the best, and there was sufficient margin of profit in its sale to warrant the additional cost involved in its manufacture. As soon as competitive conditions arose, which for the first time made the cost of the pivot pin construction a matter of material importance, neither Bourke nor the manufacturers of the alleged infringing devices had the slightest difficulty in solving the problem of lower costs in substantially the same way, but quite independently of each other.

Under these circumstances, invention should not be inferred from novelty and utility alone, and the question remains whether what Bourke did was an exercise of the inventive faculty. Shaping and fitting the lever and socket, so as to hold the lever in place under the tension of the string, involved nothing but the application of ordinary mechanical skill, and cannot be said to rise to the dignity of invention. Hollister v. Benedict Mfg. Co., 113 U. S. 59, 5 S. Ct. 717, 28

L. Ed. 901; Atlantic Works v. Brady, supra; Railroad Supply Co. v. Elyria Iron Co., 244 U. S. 285, 37 S. Ct. 502, 61 L. Ed. 1136; Burgess Battery Co. v. Novo Mfg. Co. (C. C. A.) 262 F. 972; Harvey Hubbell, Inc., v. Fitzgerald Mfg. Co. (D. C.) 283 F. 790, 793.

It follows that the patent in suit must be held invalid for lack of invention, and the complaint dismissed, with costs.