### SILVER–BROWN CO. v. SHERIDAN et al.
### No. 2889.

Circuit Court of Appeals, First Circuit.

June 14, 1934.

MORTON, Circuit Judge, dissenting.

———◇———

Francis J. V. Dakin, of Boston, Mass., for appellant.

Theodore E. Simonton, of Syracuse, N. Y. (Lowell S. Nicholson, of Boston, Mass., and John F. Neary, of New York City, on the brief), for appellees.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

WILSON, Circuit Judge.

This is an appeal from a decree of the District Court of Massachusetts in equity granting a perpetual injunction restraining the appellant from infringing a patent for a stocking protector, issued to the appellees May 15, 1928, and numbered 1,669,790. The parties will hereinafter be referred to as plaintiffs and defendant.

The District Court held that the patent issued to the plaintiffs was valid as to each of its three claims, and that the defendant had infringed the same, and awarded a perpetual injunction against the defendant and ordered an accounting.

A counterclaim was filed by the defendant to the effect that the manufacture of stocking protectors under the plaintiffs' patent, which will be hereinafter referred to as the Sheridan patent, was an infringement of a patent issued to one Weston in 1922, hereinafter referred to as the Weston patent, which was acquired by the defendant after the plaintiffs' bill was brought. The counterclaim was dismissed by the court on the ground of no

infringement. If the Sheridan patent was valid, as the court held, an article made pursuant thereto could not be an infringement of the Weston patent. On the contrary, it is now admitted by the defendant that, if the Sheridan patent is valid, there was infringement by the defendant, since it has sold stocking protectors made in accordance with the claims under the Sheridan patent.

The utility of the Sheridan patent at the outset was also denied, but it is now conceded that, if there is sufficient commercial success of a stocking protector constructed in accordance with the claims of the Sheridan patent, and the defendant has imitated it, the defendant is estopped to deny its utility. Gandy v. Main Belting Company, 143 U. S. 587, 12 S. Ct. 598, 36 L. Ed. 272; Lehnbeuter v. Holthaus, 105 U. S. 94, 26 L. Ed. 939; Boyce et al. v. Stewart-Warner Speedometer Corp. (C. C. A.) 220 F. 118; Walker on Patents, vol. 1, § 129.

The only issue left is whether the Sheridan patent is valid which involves the issue of its patentability and whether it was anticipated by the Weston patent, or the Eliason and Ziegler patent No. 1,122,884, or by the prior art as disclosed by the evidence.

As between the Sheridan and the Weston patent, we start with the proposition, as the District Court so aptly pointed out, that the former is a patent for a stocking protector, while the latter is a patent for a heel lining for repairing shoes. While the function of a device is not patentable, the device by which it functions is patentable, if it constitutes an advance over the prior art and has both novelty and utility.

The plaintiffs' stocking protector under its patent is formed of two pieces, usually of soft, flexible leather, with a base shaped to conform to the bottom of the heel of the foot and rounded at the rear end. The side wall is semielliptical in shape, coming at each end to a point. The upper edge, when completed, constitutes a uniform curve, having the same radius throughout its entire length, while the bottom edge is also cut on a uniform curve throughout the entire length, but on a longer radius than the upper edge, and is sewed or fastened to the base. The relation of the radii of the curve of the upper and lower edges is such that, when fastened to the base, the part of the side wall at the back of the heel is brought forward over the base at an angle of approximately 45 degrees, but the side walls are forced outward. When the protector thus constructed is forced on the heel of the foot and the rear wall is brought into close contact with the contour of the heel, the rear wall is brought substantially into to a vertical position, and the side walls on both sides are drawn inward, gripping the sides of the heel and thus preventing its slipping on the foot, and resulting in the stocking being held firmly within the protector, and, if there is any movement of the foot within the shoe, as there inevitably is some in walking, the protector receives all the friction from contact with the heel lining of the shoe and thus saves the sheer, thin silk stockings now worn by ladies from wear due to contact with the heel lining of the shoe.

The claims of the Sheridan patent read as follows:

"1. A stocking protector comprising two pieces of flexible material secured together, one constituting a base and the other a side wall of an article in which the rear of the side wall normally inclines forwardly and overlies the base and the lateral portions of the side wall bow outwardly from the base and when the rear portion of the side wall is moved to a substantially vertical position about its line of attachment to the base, the lateral portions of the side wall are drawn upwardly and their upper edges turn inwardly so as to overlie the base for tightly gripping the sides of the heel of a wearer.

"2. A stocking protector comprising two pieces of flexible material secured together, one constituting a base and the other a side wall, of an article in which the rear of the side wall normally inclines forwardly at an angle of substantially 45 degrees and overlies the base and the lateral portions of the side wall bow outwardly from the base and when the rear portion of the side wall is moved to a substantially vertical position about its line of attachment to the base the lateral portions of the said wall are drawn upwardly and their upper edges turn inwardly so as to overlie the base for tightly gripping the sides of the heel of a wearer.

"3. A stocking protector comprising a base substantially conforming to the bottom of a heel of a wearer, and a lateral section having an upper and a lower edge, both of which are curved, the lower edge being stitched to the edge of the base to produce an article in which the rear portion of the side section normally inclines forwardly and overlies the base and the lateral portions of the side section bow outwardly away from the base."

The claims of the Weston patent which the defendant claims the Sheridan patent infringes, and which the Weston patent anticipates, read as follows:

"1. A heel lining comprising a heel seat and a counter portion secured at its lower edge to said heel seat; said counter portion being normally at an acute angle to said heel seat along the curved edge of said heel seat.

"2. A heel lining comprising a heel seat and a counter portion; said counter portion being normally at an acute angle to said heel seat at the rear portion thereof and having a straight upper edge adapted to be stitched to the shoe coincident with the vamp stitching.

"3. The combination with a boot or shoe of a repair heel lining arranged in the heel portion of said boot or shoe over the usual lining; said repair lining having a straight upper edge stitched to the upper of said boot or shoe by stitching substantially coincident with the vamp stitching."

While the first claim of the Weston patent is fairly broad as to the form which the counter portion may take, if interpreted in connection with the specification and the accompanying drawings, and the purpose for which the device is designed and used, it can only take such form as will "present an upper edge adapted to be secured to the shoe coincident with the vamp stitching so that the ends are straight." Otherwise the article described in the claim, being limited to a heel lining, would not be workable as such.

The salient feature of the Weston patent is the shape of the counter portion so that the back will fit snugly into the bulge in the heel part of the shoe and the sides may be attached to the counter of the shoe so that they will not wrinkle or additional seams appear on the outside of the shoe. The drawings of the Weston heel lining as shown in the defendant's brief are quite different from those accompanying Weston's application; and the drawings of the plaintiffs' stocking protector, as shown in the defendant's brief, are quite different from those presented with the plaintiffs' application for a patent for a stocking protector.

Upon the evidence and findings of the District Court, the utility of the plaintiffs' stocking protector cannot be questioned. Novelty is also a question of fact, and on this point the District Court found in favor of the plaintiffs.

It is true that the plaintiffs' device is simple, but that does not militate against its patentability. Expanded Metal Company v. Bradford, 214 U. S. 366, 29 S. Ct. 652, 53 L. Ed. 1034; Diamond Rubber Company v. Consolidated Rubber Tire Company, 220 U. S. 428, 31 S. Ct. 444, 55 L. Ed. 527.

While its commercial success alone does not establish its novelty, it has some weight in case of doubt, when it is sold in competition with other devices designed for the same purpose and, at a higher price, which the evidence shows was the fact in this case, Krementz v. S. Cottle Co., 148 U. S. 556, 13 S. Ct. 719, 37 L. Ed. 558, as does the fact that the defendant has infringed it, Trico Products Corp. v. Apco-Mossberg Corp. (C. C. A.) 45 F.(2d) 594.

It is contended that the Weston patent for a heel lining anticipated the plaintiffs' patent, since it can be readily adapted to be used as a stocking protector by changing the curves of the counter; and under the familiar rule that a patentee is entitled to all the uses to which his invention may be put, whether known to him or not, if an analogous use; but a device adapted to protect a stocking and a device intended to repair heel linings are not analogous uses.

The District Judge, however, found that the defendant's heel lining was not adapted to lock to the heel of the wearer and thus protect the stocking, since it was intended to be permanently fastened to the shoe.

Defendant contends it could readily be made to lock to the heel of the wearer, but it could be made to do so only by adopting substantially the shape and curves of the side section of the plaintiffs' stocking protector, which constitute the novelty of the plaintiffs' device and its advance over the prior art.

The District Judge, after hearing the evidence which was more or less conflicting, found that the plaintiffs' stocking protector was designed for the purpose of preventing wear on the heel of the stocking, and, being unattached to the shoe, it differs radically from a heel lining attached permanently to the inside of a shoe for the purpose of repair, that there was an entirely different function performed by the two articles, and that the heel lining as constructed under the Weston patent was not intended by the inventor, nor adapted, to lock to the heel of the wearer, or to protect the heel of the stocking, and that it did not anticipate the plaintiffs' patent. Topliff v. Topliff et al., 145 U. S. 156, 12 S. Ct. 825, 828, 36 L. Ed. 658. Trico Products Corp. v. Apco-Mossberg Corp., supra.

As the court said in Topliff v. Topliff et al.: "It is not sufficient to constitute an anticipation that the device relied upon might, by modification, be made to accomplish the function performed by the patent in question, if it were not designed by its maker, nor adapted, nor actually used, for the perform-

938

ance of such functions." Los Alamitos Sugar Co. v. Carroll (C. C. A.) 173 F. 280, 285; Stebler v. Riverside Heights Orange Growers' Ass'n et al. (C. C. A.) 205 F. 735; Potts v. Creager, 155 U. S. 597, 608, 15 S. Ct. 194, 39 L. Ed. 275; Carnegie Steel Co. v. Cambria Iron Co., 185 U. S. 403, 422, 22 S. Ct. 698, 46 L. Ed. 968; Walker on Patents, vol. 1, § 107.

 Even if the Weston device for repairing the heel lining of shoes had suggested to Sheridan and Jacobs the principles of their device of a stocking protector—which the evidence does not disclose—a combination of old elements with a new one effecting a new and beneficial result may involve patentability; and the Weston device, which Weston never claimed was adapted to be used as a stocking protector, and was not modified so as to effect that purpose before the Sheridan device was put on the market and proved a commercial success, cannot be said to anticipate the Sheridan patent. Loom Company v. Higgins, 105 U. S. 580, 591, 26 L. Ed. 1177; Potts v. Creager, supra; American Cone & Wafer Co. et al. v. Denaro (C. C. A.) 297 F. 913.

If the device of the Sheridan patent did not infringe the Weston patent, the Weston patent could not anticipate the Sheridan patent and the counterclaim was properly dismissed. Whether the Weston patent was valid, it was not necessary to decide.

 The District Court having heard and seen the witnesses, the familiar rule must be applied that his findings of fact must control here unless they appear to be clearly wrong. Adamson v. Gilliland, 242 U. S. 350, 37 S. Ct. 169, 61 L. Ed. 356; Davis v. Schwartz, 155 U. S. 631, 636, 15 S. Ct. 237, 39 L. Ed. 289; Cunningham v. Merchants' National Bank of Manchester, N. H. (C. C. A.) 4 F.(2d) 25, 41 A. L. R. 529.

 We think there is no merit to the contention that the Sheridan patent was anticipated by patent No. 1,122,884 issued to Eliason and Ziegler in 1914. Proof of anticipation must be clear and cogent. Underwood Typewriter Co. v. Elliott-Fisher Co. (C. C.) 165 F. 927, 930; Deering v. Winona Harvester Works, 155 U. S. 286, 301, 15 S. Ct. 118, 30 L. Ed. 153; Kryptok Co. v. Stead Lens Co. (D. C.) 207 F. 85, 93. No previous efforts to devise a stocking protector had adopted the method of the plaintiffs to hold the protector firmly to the heel by locking the side walls to the foot as described above.

The Eliason heel guard, so-called, while designed for the same purpose as the Sheridan stocking protector, secured the result upon an entirely different principle. It was composed of two thicknesses, and relied for adherence to the stocking by having the inner part of the counter of the guard of rough material, which would adhere to the stocking, and the outer part of smooth material that would freely slip in the shoe. There was no principle involved in the Eliason heel guard of having the top of the sides of the protector locking on the heel by being drawn together by the special shape of the side walls of the protector.

Nothing in the prior art as disclosed by the evidence can be said to have anticipated the peculiar feature of the Sheridan patent, which locks the protector to the heel of the wearer.

The decree of the District Court is affirmed, with costs, and the case is remanded to that court for further proceedings.

MORTON, Circuit Judge (dissenting).

I regret that I am quite unable to agree. The Sheridan stocking protector is a mere application of the principle fully described in the Weston patent. Weston so shaped two pieces of leather that, when sewed together along designated edges, they formed a sort of pocket approximating the shape of the interior or heel portion of a shoe. As the shoe is adapted to fit the foot, obviously Weston's heel lining would fit the heel. Weston obtained this result by the novel curves in which he shaped the two pieces of leather on the edges which were joined. He explains this very clearly in his patent:

"The main object of my invention is the provision of a heel lining for use in repairing shoes which is so made that it will fit naturally and smoothly into the concavity of the heel of the shoe without requiring stretching or other manipulation. * * *

"One of the important features of my invention resides in providing a heel lining in which the back or counter portion is normally at an acute angle to the heel seat so that the rear curved portion of the heel lining projects rearwardly with the counter-portion slanting inwardly over the heel seat. I have found that when a heel lining of this shape is placed in the heel portion of a shoe, it will fit the concavity which receives the heel of the wearer naturally and without requiring stretching or other manipulation to secure smoothness and a perfect fit. This shape of the heel lining may be secured in various ways but I prefer to accomplish it by having the lower edge of the back or counter-

portion before it is united to the heel seat curved outwardly *and upon the amount of this outward curve will depend the inward slant of the counter-portion in the finished lining. * * ***

"*My heel lining can be made to fit any style of shoe since the acute angle between the counter-portion and the heel seat is controlled by the amount of curvature on the lower edge of the counter-portion, and, therefore, the projection of the heel lining rearwardly may be increased or decreased by decreasing or increasing the radius of this curve.*"

The Sheridan stocking protector is made of two pieces of leather shaped on the exact principles which Weston so clearly pointed out. The only idea which Sheridan contributed was the observation that, if a Weston heel lining were made—as the Weston patent says it may be—with a sharply inclined counter, it would when applied to the foot draw in closely around the heel. He made a Weston heel lining in this shape and patented it as a stocking protector. Nowhere either in the brief for the plaintiffs or in the opinions here or in the court below is there any effort or suggestion to distinguish in principle or basic construction the Sheridan device from the Weston. The District Judge said, "There is a fundamental difference between the articles *in purpose and use*" (italics supplied), which is true; but what we are concerned with is differences in construction or principle of operation; and there are none. Apparently, it never occurred to Weston that his heel lining could, instead of being set into a shoe, be put on the foot and used as a stocking protector. But the unescapable fact is that, if a Weston heel lining is so made that the counter slants forward at a certain angle and is then applied to the foot, a pull or draw is set up which makes it cling to the heel. Sheridan, who must be assumed to have known the Weston device, noticed this characteristic of it, and trimmed the counter portion to take advantage of it. By an oversight in the Patent Office, the Weston patent was not cited against the Sheridan application. So he got a patent to which he was not in the least entitled. It is well settled that a new use of an old device is not invention. "The application of an old device to a new use is not in itself an invention or capable of protection by a patent." Sanborn, J., Mallon v. Gregg & Co. (C. C. A.) 137 F. 68, at page 76, citing cases; Tropic-Aire v. Sears, Roebuck & Co. (C. C. A.) 44 F.(2d) 580. It seems to me extremely clear that the Sheridan patent shows no invention over Weston,

and that the bill ought to be dismissed on that ground.

With respect to the counterclaim, I understand the weight of authority now to be that, where the infringing acts are those of a corporation, the officers of the corporation are not personally liable, in the absence of proof that the corporation was insolvent or financially irresponsible, or used as a cloak or cover for individual activities, or was in other ways an instrument of fraud. Dangler v. Imperial Machine Co. (C. C. A.) 11 F.(2d) 945, 947; Claude Neon Lights, Inc., v. American Neon Light Corp. (C. C. A.) 39 F.(2d) 548. In Calculagraph Co. v. Wilson (C. C.) 132 F. 20, relied on in support of the counterclaim, Judge Hale said: "The record convinces us that at the time of the infringement the defendant was personally conducting the business, and that he intends to continue to conduct it. The law is well settled that a party cannot escape liability for his infringement by attempting to shield himself behind a corporation." Page 30 of 132 F. The facts in that case were different from those here presented. On this ground the defendant is not, I think, entitled to a decree against the plaintiffs on the counterclaim.